**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 16-0259-WS** |
| | ) | |
| **FRANK PETER SALAMONE and** | ) | |
| **HEATHER TURNER ERWIN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on defendant Frank Peter Salamone's Motion to Dismiss / Quash the Indictment (doc. 26). The Motion has been briefed and is ripe for disposition.[1]

**I.      The Indictment.**

On December 28, 2016, a four-count Indictment (doc. 1) filed in open court charged Frank Peter Salamone and two co-defendants (Heather Turner Erwin and Marangele Conde) with committing certain controlled substances offenses "in the Southern District of Alabama, Southern Division, and elsewhere." Specifically, Count One charged that, beginning on or about September 1, 2015, defendants conspired "to distribute a Schedule II controlled substance, to-wit: Methylphenidate Hydrochloride (Ritalin), contrary to Title 21 United States Code, Section 841(a)(1)," in violation of 21 U.S.C. § 846. Count Two charged defendants with conspiring during the same date range to import Ritalin into the United States, contrary to 21 U.S.C. § 952, all in violation of § 846. Count Three charged that, on or about October 14, 2015, defendants possessed with intent to distribute approximately 536 Ritalin pills, in violation of 21 U.S.C. §

---

[1]      One of Salamone's co-defendants, Heather Turner Erwin, has filed a "Joinder in Motion to Dismiss/Quash the Indictment" (doc. 36), as well as a "Joinder in Defendant's Reply to United States' Response to Defendant's Motion to Dismiss/ Quash the Indictment" (doc. 43). In light of that fact, the analysis presented and conclusions reached herein as to defendant Salamone's Motion to Dismiss/Quash the Indictment apply with equal force to defendant Erwin, who has joined in that Motion without any elaboration or additional argument.

841(a)(1).  And Count Four charged that, on or about the same date, defendants imported 536 Ritalin pills into the United States, in violation of § 952.

## II.    Analysis.

From a plain reading of the Motion to Dismiss / Quash, Salamone seeks dismissal of the Indictment on three grounds, to-wit: (i) his contention that the Indictment improperly describes the subject drug as a Schedule II controlled substance, when it is not; (ii) his assertion that venue / jurisdiction are improper in the Southern District of Alabama; and (iii) various attacks on the sufficiency of the Government's evidence to support a conviction.  Each of these categories of arguments will be addressed in turn.

### A.    Is Ritalin a Schedule II Controlled Substance?

Salamone's first ground for relief is that the Indictment erroneously lists Methylphenidate Hydrochloride (Ritalin) as a Schedule II controlled substance when it is actually found in Schedule III.  This argument is demonstrably incorrect.

The crux of Salamone's assertion is that the schedules of controlled substances set forth in 21 U.S.C. § 812 do not list this drug in Schedule II; rather, the only place that Methylphenidate is listed in is Schedule III(a)(4).  *See* 21 U.S.C. § 812(c).  Defendant insists that "the most recent updates of the United States Code providing that Methylphenidate is a Schedule III control[]."  (Doc. 40, at 3.)  Such a contention fundamentally misapprehends the relevant statutory scheme.  Section 812(c) does not purport to recite the most current, up-to-date iterations of the schedules of controlled substances; to the contrary, the caption of that subsection confirms that it contains only the "Initial schedules of controlled substances," as of October 27, 1970, when the statute took effect.  By its terms, § 812(c) provides that "Schedules I, II, III, IV, and V shall, *unless and until amended[1] pursuant to section 811 of this title*, consist of the following drugs or other substances."  21 U.S.C. § 812(c) (emphasis added).  The footnote after the word "amended" reads as follows: "Revised schedules are published in the Code of Federal Regulations, Part 1308 of Title 21, Food and Drugs."  *Id.*  Review of that regulation unambiguously confirms that Methylphenidate is now a Schedule II controlled substance.  *See* 21 C.F.R. § 1308.12(d)(4) (listing as part of Schedule II "any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system: … Methylphenidate").

The apparent incongruity between Methylphenidate's treatment in § 812(c) and its listing in § 1308.12(d)(4) may be readily explained.  Again, § 812(c) did not purport to be setting forth current, updated schedules of controlled substances; rather, on its face the statute listed only the <u>initial</u> schedules as of October 1970, and specifically cross-referenced the regulations found at Part 1308 as the location of <u>revised</u> schedules.  How are the schedules revised?  Congress expressly delegated to the Attorney General in 1970 the authority to transfer drugs between schedules as appropriate, subject to certain criteria.  *See* 21 U.S.C. § 811(a)(1)(A) ("the Attorney General may by rule … add to such a schedule or transfer between such schedules any drug or other substance if he … finds that such drug or other substance has a potential for abuse").  The Attorney General exercised that authority to transfer Methylphenidate from Schedule III to Schedule II way back on October 28, 1971.  (*See* doc. 38, Exh. B, at 8.)  Why didn't that transfer show up in the United States Code?  Because, again, Congress established a statutory framework under which it listed only the initial schedules as of October 1970, and empowered the Attorney General to revise those schedules via regulation as appropriate.  Rather than amending the statute each time the Attorney General exercised that authority (as it has done literally hundreds of times in the last 46 years), Congress chose to refer in § 812(c) to those regulations at 21 C.F.R. Part 1308 as the repository of current schedules.

Simply put, if Salamone is looking for Methylphenidate's classification in § 812(c), then he is looking in the wrong place.  Section 812(c) tells us only what the schedules of controlled substances looked like in October 1970.  It says nothing about what they look like today, or in fall 2015 when the alleged criminal activity in this case took place.  For that information, one must look to 21 C.F.R. Part 1308, which is precisely what the Government did in preparing the subject Indictment.  The Indictment accurately describes Methylphenidate Hydrochloride as a Schedule II controlled substance.  Defendant's argument to the contrary is grounded in a patent misinterpretation of the statutory framework.  The Motion to Dismiss/Quash the Indictment on this ground is, therefore, **denied**.

### B.    *Is Venue Proper in this Judicial District?*

Next, Salamone asserts that venue is lacking in the Southern District of Alabama, and that the Indictment must therefore be dismissed for lack of jurisdiction.  Defendant's position is that (i) neither he nor any co-conspirator took an overt act in this district, and (ii) "the

government cannot prosecute and allege jurisdiction for a case based on an item allegedly being found during transit."  (Doc. 26, ¶ 7.)

It is well-settled, of course, that both the Constitution and the Federal Rules of Criminal Procedure "guarantee the right of a defendant to be tried in the district in which the offense was committed."  *United States v. Roberts*, 308 F.3d 1147, 1151 (11th Cir. 2002).  The question is where the offenses charged in this Indictment were committed.  Pursuant to 18 U.S.C. § 3237(a), "[a]ny offense involving the use of the mails, ***transportation in interstate or foreign commerce, or the importation of an object*** or person into the United States is a continuing offense and … may be inquired of and prosecuted in ***any district from, through, or into which*** commerce, mail matter, or ***imported object or person moves***."  *Id.* (emphasis added).  Salamone is charged with, *inter alia*, unlawfully importing 536 Ritalin pills into the United States from Mexico.  By the plain language of § 3237(a), prosecution of that offense is proper in any district from, through, or into which that imported object moves.  The Government's evidence is that, after leaving Mexico, the imported object moved through the United States Post Office in Mobile, Alabama, which is in the Southern District of Alabama.  That circumstance renders venue and jurisdiction proper in this District pursuant to the plain language of § 3237(a).[2]

Salamone balks that the above argument misstates the law; indeed, defendant insists that "[t]he government wants to believe that since they are calling this an 'importation case' that any border the alleged package crossed can have jurisdiction.  This is simply not the law."  (Doc. 26-1, at 2.)  Defendant's position cannot be reconciled with the plain statutory language.  As discussed *supra*, § 3237(a) directs that for an offense involving transportation in foreign commerce or importation into the United States, prosecution is proper in "any district … into

---

[2]      In so concluding, the Court does not endorse the Government's "overt act" argument as a basis for jurisdiction.  The Government's Response cites various Eleventh Circuit precedents for the proposition that in conspiracy cases, venue is proper in any district where an overt act is committed.  That legal proposition is accurate, as far as it goes.  *See, e.g., United States v. Bradley*, 644 F.3d 1213, 1253 (11th Cir. 2011) ("[I]n an action involving a conspiracy, as with all continuing offenses under 18 U.S.C. § 3237(a), the offense has been committed in any district where any overt act was performed in furtherance of the conspiracy.") (citation and footnote omitted).  But nowhere in its Response does the Government identify any overt act that it says was committed by any defendant, accomplice or unindicted co-conspirator in the Southern District of Alabama.  Without such a showing, the "overt act" principle cannot establish the propriety of venue in this district.

which such commerce, mail matter, or imported object or person moves." Defendant would apparently have the Court disregard this unambiguous statutory language. The undersigned declines to do so.

It is no answer to argue, as Salamone does, that "it is not illegal to import Ritalin for valid medical use." (Doc. 26-1, at 2.) As discussed *supra*, Ritalin is a Schedule II controlled substance. As such, its importation by an individual for medical use is illegal. *See* 21 U.S.C. § 952(a) ("[i]t shall be unlawful … to import into the United States from any place outside thereof, any controlled substance in schedule I or II"). Nor does Salamone's heavy reliance on *United States v. Morgan*, 393 F.3d 192 (D.C. Cir. 2004), salvage his jurisdictional argument. In *Morgan*, the court had occasion to examine the language in § 3237(a) allowing prosecution of "[a]ny offense involving the use of the mails, transportation in interstate or foreign commerce, or importation of an object … in any district from, through, or into which such commerce, mail matter, or imported object or person moves." The D.C. Circuit in that case construed the phrase "any offense involving" as including only offenses where one of the enumerated activities (*i.e.*, use of the mails, etc.) is an element of the offense. *See Morgan*, 393 F.3d at 198 ("The most natural reading of § 3237(a) ¶ 2 is to construe 'any offense involving' by reference to the *elements* of the offense at issue. … [T]he language of the statute invites consideration of only the elements of that crime in determining whether the offense involved 'the use of the mails,' 'transportation in interstate or foreign commerce,' or 'the importation of an object or person into the United States.'"). Defendant's position that the *Morgan* interpretation of § 3237(a) entitles him to relief fails as a matter of law because importation is an element of the § 952(a) conspiracy and substantive offenses with which Salamone has been charged. *See, e.g., United States v. Miranda*, 593 F.2d 590, 596 (5th Cir. 1979) ("an essential element of the crime of importation, in a case of this type, is proof that the marijuana came from outside the United States").[3]

---

[3]        *See also United States v. Reyes*, 300 F.3d 555, 559 (5th Cir. 2002) ("The elements of the crime of importation under § 952(a) are only that the defendant played a role in bringing the [controlled substance] into the United States from a foreign country.") (citation and internal quotation marks omitted); *United States v. Vallejo*, 237 F.3d 1008, 1025 n.8 (9th Cir. 2001) (elements of § 952 violation are that "[f]irst, the defendant knowingly brought [marijuana] into the United States; and Second, the defendant knew that it was [marijuana] or some other prohibited drug") (citation omitted). Instruction 104 in the Eleventh Circuit Pattern Jury Instructions (Criminal Cases) lists the elements of a § 952(a) violation as follows: "(1) the (Continued)

Because importation is an essential element of the § 952(a) substantive and conspiracy offenses for which Salamone and his co-defendants have been indicted, the second paragraph of 18 U.S.C. § 3237(a) is directly applicable, even under a *Morgan* analysis.  As such, jurisdiction is proper "in any district from, through, or into which such commerce, mail matter, or imported object or person moves."  18 U.S.C. § 3237(a).  The Government's evidence is that the "imported object" (*i.e.*, the 536 Ritalin pills that defendants allegedly imported from Mexico) moved through the Southern District of Alabama; therefore, jurisdiction and venue are properly laid in this District.  Salamone's objection to the contrary is **overruled**.

### C.      Is the Government's Proof Sufficient?

As his third category of grounds for dismissal of the Indictment, Salamone advances a series of arguments in which he posits that the Government does not have enough evidence to convict him of the offenses charged.  For example, in the Motion itself, Salamone asserts that "any evidence of conspiracy or aiding or abetting is based on strictly hearsay testimony that would be inadmissible at trial," that "[t]here is no evidence whatsoever that the defendants ever possessed the package" or "intended to possess what was in the package," and that "[t]he indictment was based solely on hearsay evidence and double hearsay evidence."  (Doc. 26, ¶¶ 4, 6, 10.)  In his supporting brief, Salamone makes arguments with headings such as "No Facts Support Importation" and "No Evidence Supports Criminal Activity" along the same lines as the points identified in the Motion.

All of these arguments are improper.  It is black-letter law in this Circuit that a motion to dismiss an indictment does not "provide for a pre-trial determination of the sufficiency of the evidence."  *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (citations omitted); *see also United States v. Sharpe*, 438 F.3d 1257 (11th Cir. 2006) ("It is well-settled that a court may not dismiss an indictment … on a determination of facts that should have been developed at trial.") (citation and internal quotation marks omitted); *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) ("There is no summary judgment procedure in criminal cases.  Nor do the rules provide for a pre-trial determination of sufficiency of the evidence."); *United States v.*

---

Defendant imported [substance] into the United States; (2) the Defendant did so knowingly; and (3) the weight of the [substance] imported by the Defendant was more than [threshold]."

*Baxter*, 579 Fed.Appx. 703, 706 (11th Cir. Aug. 21, 2014) ("a court ruling on a motion to dismiss may not look beyond the four corners of the indictment, nor may it properly dismiss an indictment for insufficient evidence"); *United States v. Brantley*, 461 Fed.Appx. 849, 851 (11th Cir. Feb. 16, 2012) ("[T]he government argues that the district court, pre-trial, lacked the authority to dismiss Brantley's indictment based on the sufficiency of the evidence.  We agree."). Yet that is precisely what Salamone is requesting here; indeed, his argument is that the Indictment should be dismissed because the Government does not have enough admissible evidence to prove at trial that he committed the subject offenses.  Because Salamone is asking the Court to undertake an impermissible pre-trial determination of the sufficiency of the Government's proof against him, his Motion to Dismiss is properly **denied** as to that ground for relief.

**III.     Conclusion.**

         For all of the foregoing reasons, the Motion to Dismiss / Quash the Indictment (doc. 26) is **denied**.


         DONE and ORDERED this 24th day of February, 2017.


                              s/ WILLIAM H. STEELE_____
                              UNITED STATES DISTRICT JUDGE