IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CRIMINAL NO. 16-cr-00259-WS |
| | * |
| FRANK PETER SALAMONE | * |

## PLEA AGREEMENT

The defendant, **FRANK PETER SALAMONE**, represented by his counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

### RIGHTS OF THE DEFENDANT

1. The defendant understands his rights as follows:

   a. To be represented by an attorney;

   b. To plead not guilty;

   c. To have a trial by an impartial jury;

   d. To confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense; and

   e. To not be compelled to incriminate himself.

### WAIVER OF RIGHTS AND PLEA OF GUILTY

2. The defendant waives rights b through e, listed above, and pleads guilty to Count Two of the indictment, charging a violation of Title 21, United States Code, Section 963, Conspiracy to Import Methylphenidate Hydrochloride (Ritalin).

1

3. The defendant understands that the statements he makes under oath in the plea of guilty must be completely truthful and that he can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements he makes intentionally in this plea of guilty.

4. The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5. The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6. The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charge which has been brought against him. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence and the law as it relates to the facts of his offense.

7. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charge. The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

8. Defendant recognizes that pleading guilty may have consequences with respect to immigration status if he is not a citizen of the United States. Under federal law, a

broad range of crimes are removable offenses, including the offense(s) to which he is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

9. A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and his counsel are not part of this agreement and are not agreed to by the United States.

10. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court will impose. The defendant is pleading guilty because he is guilty.

11. The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the

investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## PENALTIES

12. The maximum penalty the Court could impose as to Count Two of the Indictment is:

    a. 20 years mandatory minimum to life imprisonment;

    b. A fine not to exceed $1,000,000.00;

    c. A term of supervised release of five (5) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, she could be imprisoned for the entire term of supervised release;

    d. A mandatory special assessment of $100.00; and

    e. Such restitution as may be ordered by the Court.

## SENTENCING

13. The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the

Guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

14. The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

15. The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

16. Both the defendant and the United States are free to allocute fully at the time of sentencing.

17. The defendant agrees to tender $100.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of his sentencing.

## RESTITUTION

18. Pursuant to 18 U.S.C. §§ 3556 and 3663(A), restitution is mandatory. The defendant agrees to make full restitution in an amount to be determined by the

Court at sentencing as to all relevant conduct regardless of whether it relates to the count of conviction.

## FINANCIAL OBLIGATIONS

19. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

## FORFEITURE

20. The defendant agrees to confess the forfeiture to the United States of all properties which represent proceeds of his criminal activities or which facilitated any aspect of these illegal activities.

## UNITED STATES' OBLIGATIONS

21. The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

22. The United States will recommend to the Court that the defendant be sentenced to probation for a term period to be determined by the Court.

### LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

23. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings.

    a. **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

    (1) any sentence imposed in excess of the statutory maximum;

    (2) any sentence which constitutes an upward departure or variance from the advisory guideline range.

    The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

24. If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

25. The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

26. If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

27. The defendant understands that if he breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that he might have under the Sixth Amendment and/or Speedy Trial Act.

28. In addition, if the defendant is released from detention prior to sentencing, he understands that the United States will no longer be bound by this agreement if he violates any condition of his release prior to sentencing or prior to serving his sentence after it is imposed.

## ENTIRETY OF AGREEMENT

30. This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,

STEVE BUTLER
ACTING UNITED STATES ATTORNEY

Date: March 23, 2017

_____
Lawrence J. Bullard
Assistant United States Attorney

Date: 3/23/17

_____
Vicki M. Davis
Assistant United States Attorney
Chief, Criminal Division

I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 3/24/17

_____
Frank Peter Salamone
Defendant

I am the attorney for the defendant. I have fully explained his rights to him with respect to the offense(s) charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein,

9

with the defendant and to my knowledge, his decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 3-24-17

*Cynthia D. Burney*
Cynthia Dianne Burney
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CRIMINAL NO. 16-cr-00259-WS |
| | * |
| FRANK PETER SALAMONE | * |

## FACTUAL RESUME

The defendant, **FRANK PETER SALAMONE**, admits the allegation of Count Two of the Indictment.

## ELEMENTS OF THE OFFENSE

**FRANK PETER SALAMONE** understands that in order to prove a violation of Title 21, United States Code, Section 963 as charged in Count Two of the Indictment, the United States must prove:

1. That two or more persons in some way or manner agreed or came to a mutual understanding to import Methylphenidate (Ritalin) into the United States;

2. That the defendant, knew of the unlawful purpose of the plan, and knowingly and willfully joined, and became a member of such conspiracy.

3. The object of the unlawful plan was to import Methylphenidate (Ritalin) into the United States.

## OFFENSE CONDUCT

Defendant, **FRANK PETER SALAMONE**, admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **FRANK PETER SALAMONE's** plea of guilty. The statement of facts does not contain each

1

and every fact known to the defendant and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement.

On October 14, 2015, Homeland Security Investigations and the United States Postal Inspection Service began an investigation into an organization that was smuggling Methylphenidate (Ritalin) pills in the United States from Mexico. Methylphenidate (Ritalin) is a scheduled II controlled substance. Employees from the Bay St. Louis United States Post Office contacted United States Postal Inspectors regarding approximately ten parcels originating from Nogales, Arizona that were being sent to 609 Barlow Drive Waveland, Mississippi. During the investigation, the United States Postal Inspectors discovered that each of the packages sent from Arizona were processed in the usual course of business by the United States Post Office in Mobile, Alabama prior to reaching their final destination in Mississippi.

It was also revealed during the investigation that the defendant, **FRANK PETER SALAMONE**, and the co-defendant, his wife Heather Turner Erwin aka Heather Turner Salamone resided at 609 Barlow Drive Waveland, Mississippi. United States Postal Inspectors were advised by employees from the Bay St. Louis United States Post Office that the co-defendant, Heather Turner Erwin aka Heather Turner Salamone would usually come to the post office to pick up the packages. The United States Postal Inspectors reviewed postal records and discovered that the co-defendant, Heather Turner Erwin aka Heather Turner Salamone had personally signed for approximately six out of the ten packages that had originated from Arizona.

The United States Postal Inspectors were notified by the employees from the Bay St. Louis Post Office that on the date of incident, a 12 x 9 paper express mail envelope addressed to

the co-defendant, Heather Turner Erwin aka Heather Turner Salamone was delivered to the Bay St. Louis Post Office, but the parcel had accidently opened during the processing of the mail. The employees from the Bay St. Louis Post Office observed in plain view a plastic wrapped bundle of white pills. The parcel was sent to the Inspection Service Office in Mobile, Alabama for further investigation. Approximately, 536 Methylphenidate Hydrochloride (Ritalin) pills were found in the parcel. It was learned during the investigation that the Methylphenidate Hydrochloride (Ritalin) pills had a street value of $5,360.00. The pills were tested and found to contain 9mg of Methylphenidate Hydrochloride (Ritalin) in each pill. United States Postal Inspectors contacted the co-defendant, Heather Turner Erwin aka, Heather Turner Salamone regarding the package since the package was addressed to her. The co-defendant, Heather Turner Erwin aka Heather Turner Salamone was interviewed by the U.S. Postal Inspectors and during the interview, the co-defendant, Heather Turner Erwin aka Heather Turner Salamone admitted to the United States Postal Inspectors that she was expecting a package from Arizona that a friend had mailed to her. The co-defendant, Heather Turner Erwin aka Heather Turner Salamone stated that the parcel contained her medicine.

    The co-defendant, Heather Turner Erwin aka Heather Turner Salamone admitted that her friend crosses the border into Mexico to purchase the medication and then her friend sends the medication to her in Mississippi through the United States mail. During the investigation, it was revealed that co-defendant, Marangely Conde, was the friend who would go to Mexico to obtain the Methylphenidate Hydrochloride (Ritalin) and she was the friend who mailed the subject package.

3

On April 26, 2016, authorities interviewed the co-defendant, Marangely Conde. The co-defendant, Marangely Conde admitted to law enforcement that she has known her co-defendant, Heather Turner Erwin aka Heather Turner Salamone and the defendant, **FRANK PETER SALAMONE** for approximately five years. The co-defendant, Marangely Conde admits that her co-defendant, Heather Turner Erwin aka Heather Turner Salamone asked her to go to a pharmacy in Mexico to pick up the narcotics. Marangely Conde admitted that the defendant, **FRANK PETER SALAMONE** and co-defendant, Heather Turner Erwin aka Heather Turner Salamone would wire money through Walmart to her and she would pick up the money and go to the pharmacy in Mexico. The co-defendant, Marangely Conde informed the authorities that she received $200.00 for her first trip and approximately $30.00 to $40.00 for subsequent trips to pick up the Methylphenidate Hydrochloride (Ritalin).

The co-defendant, Marangely Conde stated that she had picked up medicine for co-defendant, Heather Turner Erwin aka Heather Turner Salamone on multiple occasions. Once the co-defendant, Marangely Conde picked up the Methylphenidate Hydrochloride (Ritalin) she would cross back over the border into the United States and send the Methylphenidate Hydrochloride (Ritalin) to the co-defendant, Heather Turner Erwin aka Heather Turner Salamone via United States mail to her address in Mississippi.

During the investigation, it was revealed that the defendant, **FRANK PETER SALAMONE** had wired approximately $9,000.00 to the co-defendant, Marangely Conde. Co-defendant, Heather Turner Erwin aka Heather Turner Salamone had wired approximately $3,000.00 to co-defendant, Marangely Conde for purposes of purchasing the Methylphenidate Hydrochloride (Ritalin).

4

The defendant, **FRANK PETER SALAMONE** admitted that he would go to Walmart and swipe his debit card and then send the money via Walmart to the co-defendant, Marangely Conde. The defendant, **FRANK PETER SALAMONE** admitted that he knew it was illegal to smuggle the Methylphenidate Hydrochloride (Ritalin) pills across the border and then to mail them through the postal service.

On March 5, 2016, the DEA laboratory results confirmed that the 536 pills found on the date of incident were in fact positive for Methylphenidate Hydrochloride (Ritalin). On October 12, 2016, further tests were conducted on the pills by the United States Food and Drug Administration (FDA) to determine the amount of Methylphenidate Hydrochloride (Ritalin) that was contained in each pill. These test results confirmed that the pills contained approximately 9mg of Methylphenidate Hydrochloride (Ritalin) in each pill. The co-defendant, Marangely Conde knew it was illegal to import Methylphenidate Hydrochloride (Ritalin) in this manner and she knew the amounts of Methylphenidate Hydrochloride (Ritalin) she was smuggling into the United States was far in excess of a legitimate prescribed amount. The co-defendant, Marangely Conde was paid by the defendant, **FRANK PETER SALAMONE** and co-defendant, Heather Turner Erwin aka Heather Turner Salamone to illegally smuggle the Methylphenidate Hydrochloride (Ritalin) into the United States and the co-defendant, Marangely Conde knowingly and willfully conspired with the defendant, **FRANK PETER SALAMONE** and co-defendant, Heather Turner Erwin aka Heather Turner Salamone to smuggle Methylphenidate Hydrochloride (Ritalin) into the United States.

The United States and the defendant, **FRANK PETER SALAMONE** agree and recommend to the Court that the defendant be held accountable for the possession of 536 pills containing 9mg Methylphenidate Hydrochloride (Ritalin) each for purposes of relevant conduct.

Respectfully submitted,

AGREED TO AND SIGNED.

STEVE BUTLER
ACTING UNITED STATES ATTORNEY

Date: March 23, 2017

Lawrence J. Bullard
Assistant United States Attorney

Date: 3/23/17

Vicki M. Davis
Assistant United States Attorney
Chief, Criminal Division

Date: 3/24/17

Frank Peter Salamone
Defendant

Date: 3-24-17

Cynthia Dianne Burney
Attorney for Defendant

6